IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DOROTHY ROBISON, as Special Administratrix of the Estate of Daniel Cedars, Deceased, and GLORIA CLOUD,<br><br>Plaintiffs,<br><br>v.<br><br>IAN PETERSON, JONATHAN HORLOCK, and THE CONSOLIDATED CITY OF INDIANAPOLIS AND MARION COUNTY,<br><br>Defendants. | Case No. 1:19-cv-00589-RLY-TAB<br><br>**First Amended Complaint for Damages and Jury Trial Demand** |

COMES NOW the Plaintiffs, Dorothy Robison, as Special Administratrix of the Estate of Daniel Cedars, and Gloria Cloud, by counsel, and for their First Amended Complaint for Damages state as follows:

### I. PRELIMINARY STATEMENT

1. On November 19, 2018, Mr. Daniel Cedars was shot and killed at his home by Indianapolis Metropolitan Police Officers Ian Peterson and/or Jonathan Horlock of the Indianapolis Metropolitan Police Department,

2. This is an action for violation and deprivation of civil rights brought by Plaintiff, Dorothy Robison, as the Special Administratrix of the Estate of Daniel Cedars, Deceased, against the Consolidated City of Indianapolis and

Marion County, Ian Peterson, and Jonathan Horlock, under 42 U.S.C. § 1983 seeking all damages recoverable.

3. Additionally, this is an action for Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress brought by Gloria Cloud seeking all damages recoverable.

## II. PARTIES

4. Plaintiff, Dorothy Robison is the Special Administratrix of the Estate of Daniel Cedars, Deceased, having been appointed as such by the Marion County, Indiana Superior Court, Probate Division.

5. Daniel Cedars died intestate, thus the sole beneficiary of his estate is his son, Joseph Cedars.

6. At all times relevant herein, Dorothy Robison was a resident of Indianapolis, Marion County, Indiana.

7. At the time of his death, Daniel Cedars was a resident of Indianapolis, Marion County, Indiana.

8. At all times relevant herein, Plaintiff, Gloria Cloud, was a resident of Marion County, Indiana.

9. The Consolidated City of Indianapolis and Marion County (hereinafter "City") is a city incorporated under Indiana law and is located in Marion County, Indiana.

10. The City operates and controls the Indianapolis Metropolitan Police Department (hereinafter "IMPD") for the purpose of providing public safety

and protection to the citizens of Indianapolis and the Indianapolis Metropolitan area.

11. Ian Peterson was at all times relevant hereto a law enforcement officer, as that term is defined in Ind. Code § 35-41-1-17, and an employee of the IMPD and City who was performing his duties for and acting as an officer of the IMPD, and was acting under color of state law.

12. Jonathan Horlock was at all times relevant hereto a law enforcement officer, as that term is defined in Ind. Code § 35-41-1-17, and an employee of the IMPD and City who was performing his duties for and acting as an officer of the IMPD, and was acting under color of state law.

13. The acts and omissions giving rise to this action occurred in Indianapolis, Marion County, Indiana.

### III.  FACTS

14. Daniel Cedars was a retired police officer that was a well-respected member of the community who had worked in security for Washington Township Schools for several years.

15. Prior to passing, Daniel Cedars still regularly assisted with funerals and security after retiring from the police force.

16. On November 19, 2018, Daniel Cedars was inside his home with Gloria Cloud, and Gloria Cloud's minor grandchildren, A.G. and K.C.

17. At approximately 12:53 a.m. on November 19, 2018, officers of the IMPD were dispatched to the residence of Daniel Cedars for an alleged incomplete 911 call located at or near the residence.

18. At approximately 1:23 a.m., Ian Peterson and Jonathan Horlock were marked en route to the residence of Daniel Cedars.

19. At approximately 1:32 a.m., Ian Peterson and Jonathan Horlock were marked on scene at the residence of Daniel Cedars.

20. The vehicle of Ian Peterson and Jonathan Horlock arrived on scene with all lights off, unannounced.

21. At approximately 1:36 a.m., Ian Peterson and Jonathan Horlock broadcast a Police Action Shooting.

22. Ian Peterson and Jonathan Horlock negligently and/or intentionally fired shots from a distance away from the home in which they were safe to retreat with absolutely no regard for where the shots were going, or who was in the residence.

23. When Daniel Cedars was shot, Ian Peterson and Jonathan Horlock were outside the residence, shooting indiscriminately from a distance and position of safety with the ability to retreat.

24. At approximately 1:39 a.m., Plaintiff, Gloria Cloud, calls 911 to report that her husband had been shot inside their residence.

25. Gloria Cloud had come upon Daniel Cedars almost immediately upon being shot, as he was alive and still breathing, laying on the ground bleeding.

26. At the time of the 911 call by Gloria Cloud, the doors to the home were closed, the blinds to the windows were closed, and there were no officers inside the residence.

27. As she was providing first aid to Daniel Cedars and was on the phone with dispatch, Ian Peterson and Jonathan Horlock demanded she leave the residence with her hands up, which she complied with and at which point Daniel Cedars passed in her presence.

28. At no point did Ian Peterson or Jonathan Horlock identify themselves at the residence prior to the killing of Daniel Cedars.

29. Daniel Cedars, a well-respected member of the community, had no criminal history.

30. The gunshots fired by Ian Peterson and/or Jonathan Horlock killed Daniel Cedars.

31. A.G. and K.C. were traumatically taken from the house by IMPD officers and separated from their grandmother after the killing of Daniel Cedars.

32. Daniel Cedars and Gloria Cloud were married in a civil union, held themselves out as husband and wife to family, friends and the public, shared financial accounts, maintained financial interdependence, had been together for a significant amount of time, resided together, and maintained all common characteristics of a spousal relationship.

33. The intimate relationship of Daniel Cedars and Gloria Cloud is analogous to a husband and wife spousal relationship.

34. At all times relevant herein, Ian Peterson and/or Jonathan Horlock were police officers employed by, working for, and performing duties on behalf of the IMPD and the City, in their capacity as IMPD officers, and acting under the color of state law.

35. Ian Peterson and/or Jonathan Horlock used excessive, unreasonable and unnecessary force when they shot and killed Daniel Cedars.

36. Ian Peterson and/or Jonathan Horlock unlawfully and without legal cause shot and killed Daniel Cedars.

37. Ian Peterson and/or Jonathan Horlock's use of deadly force was intentional and objectively unreasonable.

38. Ian Peterson and Jonathan Horlock violated Daniel Cedars' rights under the Fourth and Fourteenth Amendments to the United States Constitution, to be free from unreasonable search and seizure of his home and from the use of excessive, unreasonable and unjustified force, including deadly force, against his person.

39. Ian Peterson and Jonathan Horlock deprived Daniel Cedars of his life in violation of his Constitutional rights.

40. Ian Peterson and Jonathan Horlock's actions in shooting at and killing Daniel Cedars exhibited reckless and callous indifference to Daniel Cedars' constitutional rights.

41. The policies, procedures and customs of the IMPD led to, permitted and countenanced the use of excessive, unreasonable and unnecessary force,

including deadly force, by its officers, including Ian Peterson and Jonathan Horlock.

42. The failure of the IMPD to follow and enforce some of its own internal policies and procedures led to, permitted and countenanced the use of excessive, unreasonable and unnecessary force, including deadly force, by its officers, including Ian Peterson and Jonathan Horlock.

43. The policies, procedures and customs of the IMPD led to and caused Ian Peterson and Jonathan Horlock's use of excessive, unreasonable, unnecessary and deadly force against Daniel Cedars, deprived Daniel Cedars of his constitutional rights under 42 U.S.C. § 1983, and caused Daniel Cedars' death.

44. The failure of the IMPD to follow and enforce some of its own internal policies and procedures led to and caused Ian Peterson and Jonathan Horlock's use of excessive, unreasonable, unnecessary and deadly force against Daniel Cedars, deprived Daniel Cedars of his constitutional rights under 42 U.S.C. § 1983, and caused Daniel Cedars death.

45. The IMPD has failed to institute, maintain and enforce proper procedures for training and re-training its officers relative to the use of force, including deadly force; monitoring and supervising its officers relative to their use of force, including deadly force; and disciplining its officers relative to their use of force, including deadly force, all of which constitute a willful and deliberate indifference to and a willful and deliberate disregard of the serious risk of

significant harm to members of the public and demonstrate a reckless and callous indifference to the Constitutional rights of members of the public, which led to and caused the death of Daniel Cedars.

46. The IMPD has a policy, custom and practice of failing to properly monitor the use of excessive, unreasonable and unnecessary force, including deadly force, by its officers; tolerating and failing to correct the use of excessive, unreasonable and unnecessary force, including deadly force, by its officers; and, failing to discipline, retrain or otherwise address and control the use of excessive, unreasonable and unnecessary force, including deadly force by its officers, all of which constitute a willful and deliberate indifference to and a willful and deliberate disregard of the serious risk of significant harm to members of the public and demonstrate a reckless and callous indifference to the Constitutional rights of members of the public, which led to and caused the death of Daniel Cedars.

47. The failure of the IMPD to properly and adequately review, revise, implement and enforce its policies, procedures and customs relative to investigating and handling the use of deadly force and shooting incidents in which its officers are involved constitutes a willful and deliberate indifference to and a willful and deliberate disregard of the serious risk of significant harm to members of the public and led directly to the continued use of excessive, unreasonable and unnecessary use of excessive and deadly force by its officers and led to and caused the death of Daniel Cedars.

48. The failure of the IMPD to properly and adequately review and revise its policies, procedures and customs relative to investigating and otherwise handling police shootings constituted a willful and deliberate indifference to and a willful and deliberate disregard of the serious risk of significant harm to members of the public and demonstrate a reckless and callous indifference to the Constitutional rights of members of the public, and led directly to the continued use of excessive, unreasonable, unnecessary and deadly force by its officers and led to and caused the death of Daniel Cedars.

49. The allegations set forth in paragraphs 40 through 48 are supported by facts including the following among other things:

    a. When anyone is wounded or killed by an IMPD officer, the Department's internal policies and procedures require that a Firearms Review Board be convened for purposes that include determining whether Department policies and procedures were followed by the officer(s) who were involved in the incident.

    b. There were forty-four (44) police-action shootings by IMPD officers during 2015 through 2017.

    c. The IMPD failed to convene a Firearms Review Board relative to nineteen (19) of those shooting incidents.

    d. IMPD Police Chief Bryan Roach has been quoted as saying: "This is an administrative process we haven't done a very good job of, me included."

 e. At least six (6) of the nineteen (19) shooting incidents for which no Firearms Review Board was convened involved fatal shootings.

 f. Policies and procedures such as the Firearms Review Board are a necessary part of adequately monitoring, supervising, training, re-training, correcting, disciplining and controlling members of the IMPD in their use of force, including deadly force.

 g. Different divisions of the IMPD maintain records relative to shooting incidents in which its officers are involved in different ways. Some rely on paper documents, which are scattered throughout various file folders in different offices. Other divisions maintain the records on computers, providing only some of the details regarding the shooting incidents.

 h. In this regard, IMPD Chief Bryan Roach has been quoted as saying: "The problem we're talking about right here, about our inability, quite frankly, to have all this information at our fingertips, is the fault of the administrators like me." "It has nothing to do with the men and women on the police department."

 i. The IMPD has also admitted that it has failed in another respect relative to how it handles monitoring, training and supervising its officers relative to the use of force, including deadly force. IMPD policy requires the Department to conduct a "documented annual analysis" of shootings and other uses of force by its officers "in an effort to reveal

10

patterns or trends that could indicate training needs, equipment upgrades and/or policy modifications". However, in February 2018, Major Susan Hill, of the IMPD's Professional Standards Division, was quoted as saying that the Department hasn't conducted any such analysis in recent years.

50. The facts set out above demonstrate a willful and deliberate indifference to and a willful and deliberate disregard of the serious risk of significant harm to members of the public and a reckless and callous indifference to the Constitutional rights of members of the public on the part of the IMPD, which led to and caused the death of Daniel Cedars.

## COUNT I – CIVIL RIGHTS VIOLATIONS – §1983 CLAIMS AGAINST ALL DEFENDANTS BY PLAINTIFF DOROTHY ROBISON, AS SPECIAL ADMINISTRATRIX OF THE ESTATE OF DANIEL CEDARS

51. Plaintiff, Dorothy Robison, as Special Administratrix of the Estate of Daniel Cedars, hereby incorporates by reference, re-states and re-alleges the allegations contained in paragraphs 1 through 50 of this Complaint, as though fully set out herein.

52. Plaintiff, Dorothy Robison, as Special Administratrix of the Estate of Daniel Cedars, claims damages from the Defendants for the violations of Daniel Cedars' constitutional rights under 42 U.S.C. §1983 and his death, as set out in Sections I through III above.

**WHEREFORE,** Plaintiff, Dorothy Robison, as Special Administratrix of the Estate of Daniel Cedars, and on behalf of the beneficiary, Joseph Cedars, prays for

awards against all Defendants of compensatory and punitive damages, administrative costs and expenses, attorneys fees and costs, and all other damages recoverable against the Defendants under 42 U.S.C. § 1983, and all other just and proper relief in the premises.

### COUNT II – NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS BY PLAINTIFF GLORIA CLOUD

53. Plaintiff, Gloria Cloud, hereby incorporates by reference, re-states and re-alleges the allegations contained in paragraphs 1 through 52 of this Complaint, as though fully set out herein.

54. On December 7, 2018, Gloria Cloud provided the Defendants and necessary parties with her timely Tort Claim Notice against the Defendants for negligent and intentional infliction of emotional distress, pursuant to Ind. Code § 34-13-3-10.

55. As described in Gloria Cloud's Tort Claim Notice, Plaintiff, Gloria Cloud has endured extreme emotional pain and suffering, because she was forced to witness the gruesome death of Daniel Cedars, and Plaintiff Gloria Cloud will continue to suffer such damages in the future, as a direct and proximate result of the Defendants' carelessness and negligence.

56. The Defendants performed the acts detailed above with the intent of inflicting severe emotional distress or with knowledge of the high probability that the conduct would cause such distress.

57. The Defendants knew or should have known that their actions would cause Plaintiffs severe emotional distress.

58. As a direct and proximate result of this conduct, Gloria Cloud did in fact suffer severe emotional distress, including mental anguish and physical pain.

59. The Defendants have negligently and/or intentionally inflicted unreasonable anguish and emotional distress upon Gloria Cloud.

**WHEREFORE,** Plaintiff, Gloria Cloud, prays for an award of damages according to proof and which is fair, just and reasonable against the Defendants and all other just and proper relief in the premises.

Respectfully submitted,

/s/ Brandon E. Tate
Brandon E. Tate, Atty. No. 31531-49
TATE & BOWEN LLP
156 E Market St, 3rd Floor
Indianapolis, IN 46204
317-296-5294
F: 317-423-0772
brandon.tate@tatebowenlaw.com


Jason A. Shartzer, Atty. No. 23989-49
Shartzer Law Firm, LLC
156 E Market St., 10th Floor
Indianapolis, IN 46204
317-969-7600
F: 317-969-7850
jason@shartzerlaw.com

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all matters at issue herein.

Respectfully submitted,

*/s/ Brandon E. Tate*
Brandon E. Tate, Atty. No. 31531-49
TATE & BOWEN LLP
156 E Market St, 3rd Floor
Indianapolis, IN 46204
317-296-5294
F: 317-423-0772
brandon.tate@tatebowenlaw.com


Jason A. Shartzer, Atty. No. 23989-49
Shartzer Law Firm, LLC
156 E Market St., 10th Floor
Indianapolis, IN 46204
317-969-7600
F: 317-969-7850
jason@shartzerlaw.com

## Certificate of Service

I certify that on March 4, 2019, I electronically filed the foregoing document I also certify that on March 4, 2019 the foregoing document was served upon the following counsel of record via E-Filing E-Service:

Adam Willfond
adam.willfond@indy.gov

Anne Harrigan
Anne.harrigan@indy.gov

/s/ *Brandon E. Tate*
Brandon E. Tate (#31531-49)

14